UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**AMERICAN PAN COMPANY,**

        **Plaintiff,**

**-vs-**

**LOCKWOOD MANUFACTURING, INC.,**

        **Defendant.**

Case No. C-3-06-197

Judge Thomas M. Rose

**ENTRY AND ORDER OVERRULING LOCKWOOD'S MOTION TO DISMISS (Doc. #7)**

    This matter is a contract dispute between Plaintiff American Pan Company ("American Pan") and Defendant Lockwood Manufacturing, Inc. ("Lockwood"). American Pan is an Ohio corporation headquartered in Urbana, Ohio. American Pan manufacturers commercial bun and specialty pans and distributes them to bakeries throughout the world. Lockwood is a Canadian corporation with its principal place of business in Brantford, Ontario. Lockwood is also a manufacturer and seller of commercial baking pans.

    American Pan alleges that Lockwood breached a Sales Agency Agreement between the parties. American Pan's Complaint was originally brought in the Court of Common Pleas of Champaign County, Ohio and was removed to this Court by Lockwood based upon this Court having diversity jurisdiction.

    Lockwood now seeks dismissal of American Pan's Complaint based upon the common-law doctrine of *forum non conveniens*. (Doc. 7.) Lockwood's motion to dismiss is fully briefed

and ripe for decision. The relevant law regarding *forum non conveniens* will first be set forth followed by an analysis of Lockwood's motion.

## *FORUM NON CONVENIENS*

The common law doctrine of *forum non conveniens* is only applicable in situations, as here, involving foreign plaintiffs. *Duha v. Agrium, Inc.*, 448 F.3d 867, 883 (6th Cir. 2006)(Cole, J. dissenting). Domestic *forum non conveniens* has been replaced with a statute, 28 U.S.C. § 1404(a). *Id.*

The doctrine of *forum non conveniens* is grounded on the proposition that "in rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Ryerson v. Deschamps*, Case No. G-05-092, 2005 U.S. Dist. LEXIS 3412 at *9 (S.D.Tex. Jan. 13, 2006)(quoting *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 722 (1996)). A complaint may be dismissed based upon the doctrine of *forum non conveniens* when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors shows that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court. *Duha* 448 F.3d at 873.

The private factors to be considered are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for and the cost of obtaining attendance of unwilling witnesses; (3) the possibility of a view of the premises; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) problems of enforcing a judgment if one is obtained; and (6) relative advantages and obstacles to a fair trial, if any. *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989)(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

The public interest factors to be considered are: (1) administrative difficulties of courts with congested dockets; (2) the burden of jury duty on people of a community having no connection with the litigation; (3) the desirability of holding a trial near those most affected by it; and (4) the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Id.*

No one factor is determinative when evaluating these factors. *Id.* at 107. "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)).

In any balancing of conveniences, a showing of convenience by a plaintiff who has brought suit in his home forum will normally outweigh the inconvenience that the defendant may have shown. *Duha*, 448 F.3d at 874. However, in suits, as is the case here, involving a U.S. plaintiff and a foreign defendant, the U.S. plaintiff's choice of forum permits dismissal only if the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (citing *Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947)). Having set forth the relevant law regarding *forum non conveniens*, the analysis turns to Lockwood's motion.

**EXISTENCE OF ADEQUATE AND AVAILABLE FORUM**

The threshold question when considering a motion to dismiss based upon the doctrine of *forum non conveniens* is whether an adequate and available alternate forum exists. Here,

Lockwood presents evidence that it is amenable to process in the Ontario Superior Court of Justice. (Declaration of Patrick Murray ("Murray Decl.") ¶ 3 7/28/06.) Lockwood also argues that there is no evidence to indicate that the Ontario Superior Court of Justice is in any way an unsatisfactory forum. American Pan offers no response. Therefore, Lockwood has shown that an adequate and available alternate forum exists and the analysis turns to the private and public interests.

**PRIVATE INTERESTS**

Courts have identified several factors used in weighing the private interests. Each will be addressed in turn.

1. Relative Ease of Access To Sources of Proof

Regarding this first private-interest factor, Lockwood argues that virtually all sources of proof, both documentary and tangible, will be located in Ontario, Canada because the subject matter of the complaint relates exclusively to Lockwood's alleged business conduct. Further, any evidence relating to the alleged purchase or sales of commercial baking pans will be located in Canada because Lockwood is located in Canada and its primary sales market is located in Canada. (Murray Decl. ¶¶ 4-5.) By contrast, according to Lockwood, it is not apparent that any sources of proof are in Ohio.

American Pan responds that much of the evidence that it needs to prove its case is located within the United States and in Ohio. Specifically, American Pan knows of at least four bakeries that are located in the United States to which Lockwood allegedly attempted to sell or actually sold pans that were not manufactured by American Pan. (Affidavit of Elizabeth A. Bundy ("Bundy Aff.") ¶¶ 9-10.)

American Pan further argues that much of its case can be supported by Lockwood's business records and discovered through the use of interrogatories and document requests. As to the documents possessed by Lockwood in Canada, the Sixth Circuit has held that shipping documents from a foreign location to the United States "can hardly be vexations or oppressive." *Duha*, 448 F.3d at 876. Finally, presumably all of the necessary documents are written in the English language and would not need to be translated.

2. Availability of Compulsory Process and Cost of Obtaining Attendance of Unwilling Witnesses

Regarding this second private interest factor, Lockwood argues that the majority of party witnesses are likely to be defense witnesses given the nature of the allegations and the only other potentially relevant witnesses presently identifiable are corporations and individual purchasers that make up Lockwood's primary sales market. Further, compulsory process for any unwilling witnesses, according to Lockwood, will be available only in a Canadian court and not from this Court. Finally, Lockwood argues that the costs of procuring even voluntary witnesses will be greater if the case proceeds in this Court. However, Lockwood declines to identify any witnesses at this time.

American Pan responds that it will not need to depose any of Lockwood's customers in Canada because much of its case can be supported by Lockwood's business records and that many of the witnesses with knowledge of the Sales Agency Agreement are American Pan employees located in Ohio. (Bundy Aff. ¶ 11.) American Pan also argues that Lockwood has not shown that its customers would be unwilling to testify. Presumably, witnesses from the four bakeries identified by American Pan are either willing or amenable to process here.

3.View of the Premises

Regarding this third private interest factor, a view of the premises is not an issue in this matter. It is a breach of contract action and neither party has indicated that a view of any premises will be necessary.

4. All Other Practical Problems That Make Trial Easy, Expeditious and Inexpensive

Regarding this fourth private interest factor, neither of the parties has identified additional factors that would make trial easier, more expeditious or less expensive in one location being considered more than the other. Therefore, this factor is not an issue in this matter.

5. Problems of Enforcing a Judgment If One Is Obtained

Regarding this fifth private interest factor, Lockwood argues that any judgment obtained by American Pan will not be enforced in Ohio because Lockwood is a Canadian corporation with its principal place of business in Ontario and which has no assets, property or accounts in Ohio. (Murray Decl. ¶ 6.) In support, Lockwood cites law that this Court cannot enforce a judgment that would require seizure of assets located in a foreign country. *Ryerson*, 2006 U.S. Dist. LEXIS 3412 at * 14.

American Pan responds that it has the choice to enforce its judgment in whatever manner it chooses and that it is prepared to take whatever additional steps may be necessary to enforce any judgment against Lockwood. American Pan further indicates that Lockwood's alleged sales in the United States create accounts receivable that could be attached in the United States.

6. Relative Advantages and Obstacles To a Fair Trial

Regarding this sixth private interest factor, Lockwood argues that there are no obstacles to a fair trial in either forum. American pan offers no argument on this factor. Having discussed

the argument and evidence regarding the private interest factors, the analysis turns to each of the public interest factors.

## PUBLIC INTERESTS

Courts have identified four factors to be considered with regard to the public interest. Each will be addressed in turn.

1. Administrative Difficulties of Courts With Congested Dockets

Neither party has presented argument or evidence regarding this first public interest factor. This Court is not aware of possible administrative difficulties associated with the alternate forum, and this Court currently has no administrative difficulties associated with its docket.

2. Burden On the Community

Neither party has presented argument or evidence regarding this second public interest factor. However, this Court has had minimal problems obtaining qualified jurors for its trials, including trials that may have little or no connection to the community in which the jurors reside.

3. Holding Trial Near Those Most Affected By It

Lockwood presents no argument or evidence in this third public interest factor. However, American Pan argues that this factor weighs in favor of litigating the dispute in this Court.

The controversy arises from a contract allegedly entered into by American Pan, a local company, and courts have found that "there is local interest in having localized controversies decided at home." *Stewart*, 865 F.2d at 106 (citing *Dowling v. Richardson-Merrell Dow Pharmaceuticals, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)). American Pan also argues that Lockwood has purposefully availed itself of the privilege of doing business in Ohio, particularly

with American Pan, and must, therefore, be accountable to the citizens of Ohio for its contractual obligations with an Ohio corporation.

4. Familiarity With Governing Law

Regarding this fourth public interest factor, Lockwood argues that dismissal of this case in favor of a Canadian forum would keep this Court from having to apply foreign law with which it may not be familiar. American Pan responds that Ohio law applies.

The parties agree that Ohio's choice-of-law provisions are to be used. However, each party would reach a different result.

The initial determination is whether Ohio's choice-of-law provisions should be applied in this case. The Supreme Court has cautioned lower courts to "avoid conducting complex exercises in comparative law." *Piper*, 454 U.S. at 251. This caution has been reinforced by the Sixth Circuit. *Kryvicky v. Scandinavian Airlines System*, 807 F.2d 514, (6th Cir. 1986). However, the exercise in comparative law being referred to is first a determination of the law to be applied in the chosen forum followed by a determination of the law to be applied in the alternative forum followed by a comparison of rights, remedies and procedures available under the law that would be applied in each forum. *Piper*, 454 U.S. at 251.

In this case, the parties agree that Ohio's choice-of-law provisions apply and presumably Ohio's choice-of-law provisions produce only one result. Therefore, a determination of whether Canadian or Ohio law applies in this case does not entail a determination of the law to be applied in Ohio, a determination of the law to be applied in Canada and a comparison of rights, remedies and procedures available under each. The Supreme Court's caution, thus, does not apply here.

Choice of Law

Turning then to the choice of law, a federal court exercising diversity jurisdiction, which is the case here, must apply the choice-of-law rules of the forum state. *International Insurance Co. v. Stonewall Insurance Co.*, 86 F.3d 601, 604 (1996). In this case, Ohio is the forum state.

Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract when the parties have not specified which state's substantive law should govern the contract. *Id.* Further, Ohio has adopted the test set forth in the Restatement (Second) of Conflict of Laws § 188 (1971) to determine the state with the most significant relationship. *Id.* Section 188 provides in relevant part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties … the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> 	(a) the place of contracting
> 	(b) the place of negotiation of the contract
> 	(c) the place of performance
> 	(d) the location of the subject matter of the contract, and
> 	(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* at 604-05.

Lockwood first argues that the Sales Agency Agreement is governed exclusively by Ontario and Canadian law. Although the Sales Agency Agreement contains no choice-of-law provision, Lockwood argues that the choice-of-law provision in the Asset Contract between Lockwood and American Pan applies.

When a dispute arises, courts are to examine contracts, such as the Asset Contract and the Sales Agency Agreement, with the purpose of giving effect to the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 678 N.E.2d 519,

526 (Ohio 1997). "[A] writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Id.* Further, courts should give effect to every provision provided in the writings. *Id.* Applying this principle, one Ohio court has found that a contract should be construed in the light of a previous contract when the previous contract is evidently designed to control the relations of the parties for a period covered by the latter contract unless the latter contract is manifestly an abrogation of the former. *Starr Co. v. Columbia Broadcasting System, Inc.*, 36 N.E.2d 861, 864 (Ohio Ct. App. 1941).

The term "transaction" as used above is subject to various definitions but, unless otherwise defined by the contract, should be given its plain and ordinary meaning. *Leslie v. Baltes*, Case No. 89AP-1220, 1990 WL 75396 at *3 (Ohio Ct. App. June 7, 1990). The plain and ordinary meaning of transaction provided by Webster's New Universal Unabridged Dictionary is a business deal that is transacted or completed. *Id.* The Oxford English Dictionary defines transaction as "the carrying on or completion of an action or course of action, the accomplishment of a result." *Id.* Having set forth the relevant law regarding contract interpretation, the analysis turns to the contracts at issue here.

The Asset Contract and the Sales Agency Agreement

American Pan and Lockwood entered into the Asset Contract on August 6, 1993. The Asset Contract provides for the sale of Lockwood's manufacturing assets to American Pan. (Asset Contract ¶ 1.) The Asset Contract also identifies the closing of the "within transaction of purchase and sale." The Asset Contract further specifies August 26, 1993 as the date of closing and describes what is to take place at closing. (Id. ¶ 3.)

In addition to describing the closing, the Asset Contract provides that the warranties and covenants of the vendor are to survive the closing and delivery. (Id. ¶ 8.) The Asset Contract also indicates that it is the entire agreement between Lockwood and American Pan. (Id. ¶ 14.)

The Asset Contract provides that, simultaneous with the closing, American Pan and Lockwood "will enter into agency agreements regarding the sale of products…" and describes the provisions to be included in the agency agreements. (Id. ¶ 16.) Paragraph 16 of the Asset Contract makes no mention of choice-of-law but provides that the terms of paragraph 16 "shall be superceded by the terms of agency agreements entered into between [Lockwood] and [American Pan]… pursuant to this paragraph if in any way and to the extent that the terms of said agency agreements are in conflict with the terms of [the Asset Contract]." (Id. ¶ 16.) Finally, the Asset Contract contains the following choice-of-law provision: "This Agreement is delivered and is intended to be performed as an Ontario contract and shall be governed in all respects exclusively by the laws of Ontario and the laws of Canada as applicable." (Id. ¶ 18.)

The Sales Agency Agreement, which is the subject of this litigation, was entered into simultaneous with the closing of the Asset Contract. (Bundy Aff. ¶ 4.) The Sales Agency Agreement contains no choice-of-law clause. It does provide that notices to be given under the Sales Agency Agreement are to be given as provided in the Asset Contract, but includes no further references to the Asset Contract.

Based upon a reading of the Asset Contract and the Sales Agency Agreement in light of the applicable law regarding contract interpretation, the choice-of-law provision in the Asset Contract applies to the Sales Agency Agreement even though the Sales Agency Agreement includes no specific choice-of-law provision.

The Asset Contract and the Sales Agency Agreement are a part of the same transaction. The Asset Contract regards the tools of manufacturing and the Sales Agency Agreement regards the sale of products made with those tools of manufacturing. The parties agreed in the Asset Contract that they would enter into the agency agreements, when they would do so and what the agency agreements would address. Finally, the Asset Agreement was clearly intended to control the relationship of the parties for a period covered by the Sales Agency Agreement.

Since the Asset Contract and the Sales Agency Agreement are a part of the same transaction, they are to be read as a whole, and the intent of each part will be gathered from a consideration of the whole. First, the Asset Contract includes a choice-of-law provision. The Asset Contract also includes a provision that the terms of paragraph 16 of the Asset Contract will be superceded by the terms of the Sales Agency Agreement if there are conflicts with paragraph 16 but no provision that the terms of other paragraphs, including the choice-of-law provision, will be superceded by the Sales Agency Agreement.

The Sales Agency Agreement does not include a choice-of-law provision. However, it also does not manifestly abrogate the choice-of-law provision in the Asset Agreement.

The Asset Contract indicates that it may be changed only by agreement of the parties. As indicated above, the Sales Agency Agreement does not include language changing the choice-of-law provision in the Asset Contract. Based upon a reading of the Asset Contract and the Sales Agency Agreement together, the parties intended for the choice-of-law provision in the Asset Contract to apply to the Sales Agency Agreement.

The choice-of-law provision in the Asset Contract provides that the agreement is to be governed in all respects exclusively by the laws of Ontario and the laws of Canada as applicable.

Also, Ohio's choice-of-law provisions turn first to an effective choice of law by the parties. Therefore, applying Ohio's choice-of-law provisions, this dispute regarding the Sales Agency Agreement will be governed by the laws of Ontario and the laws of Canada as applicable. However, it is not uncommon for U.S. courts to hear cases in which foreign law is applied. *Gutierrez v. Diana Investments Corp.*, 946 F.2d 455, 456 n.3 (6th Cir. 1991).

## WEIGHING OF PRIVATE AND PUBLIC INTERESTS

The private interests that are at issue in this matter weigh in favor of this forum. American Pan indicates that much of the evidence it needs to prove its case is located in the United States or can easily be mailed to the United States by Lockwood. Also, American Pan indicates that it will not need to depose any of Lockwood's customers in Canada and American Pan's witnesses in the U.S. are either willing or amenable to process. Finally, American Pan has indicated that it has the choice to enforce its judgment in whatever manner it chooses and identifies at least one source of funds that may be able to be reached by the judgment of a U.S. court.

The public interests that are at issue here also weigh in favor of this forum. This Court currently has no administrative difficulties and the local community surrounding this forum has an interest in and is most affected by the resolution of a dispute involving a local company.

Regarding governing law, the law of Canada and Ontario applies and gives some weight to resolving this dispute in the alternate forum. However, it is not uncommon for U.S. courts to apply foreign law and this court stands ready, willing and able to do so.

In cases such as this, involving a U.S. plaintiff and a foreign defendant, the U.S. plaintiff's claim will be dismissed pursuant to the doctrine of *forum non conveniens* only if the

defendant establishes such oppressiveness and vexation to itself as to be out of all proportion to plaintiff's convenience, which may be slight or non existent.  Here, Lockwood has not even met a minimum burden, let alone the heightened "oppressivness and vexation" burden. While Lockwood has shown that American Pan's claim could be heard in the alternate forum, it has not shown that trial in this forum would be unnecessarily burdensome for itself or this Court.

## CONCLUSION

Lockwood's motion to dismiss premised upon the doctrine of *forum non conveniens* is OVERRULED.  American Pan's breach-of-contract claim remains to be adjudicated in this Court pursuant to the laws of Ontario or Canada, as applicable.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Sixth day of September, 2006.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record